IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                    Cv. No. 04-2465-B/V
                                       Cr. No. 00-20138(H)
KEITH ECHOLS,

    Defendant.

_____

ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
_____

    Defendant, Keith Echols, an inmate at the United States Penitentiary ("USP") in Coleman, Florida, Bureau of Prisons ("BOP") registration number 17527-076, filed a motion under 28 U.S.C. § 2255, attacking his imprisonment under a conviction for violating 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c).

    On August 9, 2000, a federal grand jury indicted Echols and three co-defendants on one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) and one count of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 942(c). From February 11 until February 14, 2002, United States District Judge Thomas Higgins of the Middle District of Tennessee presided at a jury trial which concluded with the jury convicting Echols of both counts of the indictment.

    On May 6, 2002, Judge Higgins conducted a sentencing hearing and on May 14, 2002, entered a sentence of 115 months imprisonment

for the armed bank robbery and a consecutive sentence of sixty months on the firearm conviction for a total sentence of 175 months imprisonment.  The court also imposed a five-year period of supervised release on each count to run concurrently.

Defendant appealed contending that the district court should have suppressed evidence found in the car in which he was riding because the police did not have reasonable suspicion to stop the car, and that the district court should not have included the value of personal property taken during the robbery in calculating loss under the sentencing guidelines.  The Sixth Court of Appeals affirmed the judgment and the sentence imposed.  United States v. Echols, No. 02-5626, 2003 WL 22976593 (6th Cir. Dec. 5, 2003).

Defendant contends that:

1) counsel provided ineffective assistance by:

   (a) failing to inform the Defendant that by going to trial he would receive a harsher sentence than if he pleaded guilty;

   (b) failing to properly advise the Defendant that the career offender enhancement under United States Sentencing Guidelines (U.S.S.G.) § 4B1.1 was inapplicable;

   (c) failing to object to a two point increase in offense level under § 2B3.1(b)(2)(C) for brandishing, displaying, or possessing a firearm weapon during the bank robbery, as double counting, because he was also convicted of violating section 18 U.S.C. §924(c);

   (d) failing to object to his co-defendants testimony against him as a violation of 18 U.S.C. § 201(c)(2); and

2) his sentence was improperly enhanced violating the principles of Blakely v. Washington, 542 U.S. 296 (2004).

2

The United States responded to the motion on March 7, 2006, filing the affidavit of Echols' trial counsel, Michael Stengel, (attached Exhibit A), as support for its argument that Echols' motion is entirely without merit and should be denied.

Echols contends in Issue 2 that Blakely is a new constitutional rule of criminal procedure which entitles him to be resentenced. He cannot demonstrate, however, that Blakely has been "made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255. New rules of constitutional criminal procedure are generally not applied to cases on collateral review. Teague v. Lane, 489 U.S. 288 (1989).

In United States v. Booker, 530 U.S. 466 (2005), although the United States Supreme Court determined that its holding in Blakely applies to the Sentencing Guidelines, Booker, 543 U.S. 242-244, the Court also expressly stated that its holding must be applied to all cases on direct review. Booker, 543 U.S. at 268 (citing Griffith v. Kentucky, 479 U.S. 314, 328 (1987)("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past")).

The Sixth Circuit determined in Humphress v. United States, 398 F.3d 855 (6th Cir. 2005), that the rule of Booker does not fall within the either exception of Teague. Id. at 863.

> First, the nonretroactivity rule "does not apply to rules forbidding punishment 'of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" Beard v. Banks, 542 U.S. 406, 416 (2004)(quoting Penry v.

3

> Lynaugh, 492 U.S. 302, 330 (1989)).  Because this exception is clearly inapplicable, we proceed directly to our analysis of Teague's second exception.  Beard succinctly explained the second Teague exception:
>
>> The second exception is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.  We have repeatedly emphasized the limited scope of the second Teague exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty.  And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second Teague exception.
>
> Beard, 492 U.S. at 417.

Humphress, 398 F.3d at 862.  Noting that the United States Supreme Court had never held that a new rule of criminal procedure falls within Teague's second exception, the Sixth Circuit concluded that the rule of Booker does not apply retroactively in collateral proceedings.  Humphress, 398 F.3d at 863.  Neither Blakely nor Booker provide Echols with a basis for relief in this proceeding. Issue 2 is without merit and is denied.

A § 2255 motion can never be utilized as a substitute for an appeal.  Sunal v. Large, 332 U.S. 174, 178 (1947); United States v. Walsh, 733 F.2d 31, 35 (6th Cir. 1984).  Failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion.

> Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system.  Hence, when a federal statute, but not the Constitution, is the basis for postconviction attack,

> collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process.

Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996)(citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Even claims of constitutional error that could have been raised on appeal are waived unless the defendant demonstrates cause and prejudice for that failure. United States v. Frady, 456 U.S. 152, 167-68 (1982).

Echols attempts to demonstrate cause and prejudice by alleging that counsel was ineffective by failing to raise these claims on appeal. Strickland v. Washington, 466 U.S. 668, 687 (1984) establishes the standard for an ineffective assistance claim. A petitioner must show:

1. deficient performance by counsel; and
2. prejudice to the defendant from the deficient performance.

See id. at 687.

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a movant under § 2255 must establish "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(citing United States v. Cronic, 466 U.S. 648, 658 (1984)).  "Thus an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."  Fretwell, 506 U.S. at 369.

Issues 1(a) and (b) are intertwined.  Echols alleges that he requested that counsel explore the possibility of a plea bargain with the United States.  He advised his attorney "that he would plead guilty to the armed bank robbery count for a ten year sentence and dismissal of the firearms charge." (Echols motion, p. 4) Defendant further contends that counsel informed him that the United States would agree to dismiss the firearms count if he pled guilty to the bank robbery, however, he would be subject to a mandatory twenty-five year sentence "because of [Echols'] past record."  He alleges that counsel advised him that because he was a career offender, he "might as well go to trial."

Echols contends that he did not learn until sentencing that he was not a career offender and that he was not subject to a mandatory minimum sentence of twenty-five years.  He claims that

had he pled guilty and received a reduction for acceptance of responsibility, his sentence would have been less than ten years. Echols' contention is based upon the premise that the United States was willing to dismiss the firearms count.

Defendant submits that his counsel's erroneous advice to go to trial as opposed to pleading guilty resulted in a harsher sentence. The United States has provided the affidavit of Echols' trial counsel, Michael Stengel, who states that during his representation, "which lasted from [his] appointment on November 8, 2001, until [he] was relieved as counsel of record by court order entered February 25, 2002, the United States never made an offer to settle the case." (United States' response, Exhibit A, para. 4). Stengel admits that he was concerned there was a significant risk that Echols would be found to be subject to the career offender enhancement but informed Echols it was only his opinion. (Id., para. 5). Most importantly, Stengel relates:

> During my representation of Mr. Echols in W.D. Tenn. No. 00-20138 I asked Mr. Echols for authority to discuss a possible settlement and plea agreement with the United States. Mr. Echols never gave me such permission. No plea discussions ever took place with the government because it never made a settlement offer and I was never given the authority by Mr. Echols to approach the United States about a possible plea in the case.
>
> . . .
>
> During my representation of Mr. Echols in W.D. Tenn. No. 00-20138 I was governed by the Code of Professional Responsibility, Tenn. Sup. Ct. R. 8. I was aware that I had an obligation to convey any settlement offer received to Mr. Echols since the decision whether to accept of reject any offer made was his, not mine. E.C. 7-7. I did not convey any settlement offer because the United States never made one. My practice, since 1986, has been to document any and every settlement offer by signing an acknowledgment that the offer was received, reviewed,

> discussed, and understood. I have reviewed my closed file on this representation. That review confirms that the United States never made a settlement offer and Mr. Echols never authorized me to seek a settlement offer. Mr. Echols always maintained his innocence of the charges he faced. His steadfast opinion precluded me from soliciting a settlement offer from the United States.

(Id., para. 6-9).

Echols fails to rebut the affidavit of trial counsel and provides no factual support for his argument that the Government made any plea offers which provided a lesser sentence or that he ever offered to plead guilty. Defendant proceeded to trial on matters relating to factual guilt rather than any constitutional challenge to a statute or the applicability of a statute to his conduct. Echols has continually failed to admit his role in this offense. He could have agreed to plead guilty without inducements at any time in the case. United States v. Mabry, 3 F.3d 244 (8th Cir. 1993); Cf. United States v. Crain, 33 F.3d 480 (5th Cir. 1994)(Government's refusal to bargain does not justify the two-level adjustment for acceptance of responsibility). This claim is without any factual basis.

Defendant cannot demonstrate that the resulting sentence upon a plea of guilty would have been different because he has no factual basis underlying his argument. Thus, he cannot demonstrate any prejudice from his attorney's action or inaction which affected his sentence. Thus, his sentence was not fundamentally unfair or unreliable, and Issues 1(a) and (b) are without merit and are denied.

Issue 1(c) is without legal or factual foundation. Section 924(c) defines a completely separate crime from the bank robbery

statute. The Court construes the issue to be a contention that Echols should not have received an increase in offense level under § 2B3.1(b)(2)(C) for brandishing, displaying, or possessing a firearm weapon during the robbery, because he was also convicted of violating section 924(c). Section 2K2.4 impacts the sentence of a defendant who is convicted under 18 U.S.C. § 924(c) providing in part that:

> [i]f the defendant, whether or not convicted of another crime was convicted under 18 U.S.C. § 844(h), § 924(c), or § 929(a), the term of imprisonment is that required by statute.

U.S.S.G. § 2K2.4(a). In each of those cases, the statutes require the statutory term of imprisonment to be served consecutively to any other term of imprisonment. Application Note 2 to § 2K2.4 provides that where a defendant receives a mandatory consecutive sentence under § 924(c), the court should not also enhance the defendant's offense level for the underlying crime to account for the use of the firearm.

Sections 2B3.1(a), 2B3.1(b)(1), and 2B31(b)(7)(B) of the United States Sentencing Guidelines prescribe Echols' base offense level as 23. A five level increase pursuant to § 2B3.1(b)(2)(C) would have been applied for brandishing or possessing a weapon during the robbery but for Defendant's conviction under § 924(c). Review of the presentence report and the transcript of sentencing reveal that the Defendant was properly sentenced and did not receive a weapons enhancement in conjunction with his sentence for the robbery offense. Echols instead received a consecutive sentence of five years for his conviction under § 924(c). Thus,

9

Defendant's argument that his attorney should have objected to his sentencing as violating his protection against double jeopardy or constituting double counting fails.  Counsel was not ineffective for failing to raise this frivolous issue.  Issue 1(c) is denied.

To the extent that Echols argues that his attorney provided ineffective assistance by failing to argue that the United States violated t18 U.S.C. § 201(c)(2) by plea bargaining with his co-defendants, his claim is without merit because it seeks to blame counsel for raising an argument that is indisputably devoid of legal merit.  This claim is based upon United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), which held it was a violation of § 201(c) for a federal prosecutor to enter into an agreement with an accomplice to the defendant on trial whereby the accomplice agreed to testify truthfully in return for leniency, including a possible § 5K1.1 motion from the government for a downward departure.

However, the en banc Tenth Circuit vacated the panel decision sua sponte, 144 F.3d at 1361, and then reversed the panel decision, authoritatively rejecting the panel's reasoning.  United States v. Singleton, 165 F.3d 1297 (10th Cir. Jan. 8, 1999).  As noted by the en banc decision, the panel opinion was universally rejected by every case decided since it was announced.  Singleton at 1301.  See, e.g., United States v. Arana, 18 F. Supp. 2d 715, 718-21 (E.D. Mich. 1998).  The Sixth Circuit held in United States v. Ware, 161 F.3d 414, 425 (6th Cir. 1998) that even if prosecuting attorneys were included within the scope of § 201(c)(2), it would not apply the exclusionary rule to suppress the testimony of cooperating accomplices.  As Issue 1(d) is without merit, any claim that

10

counsel was ineffective for failing to raise the meritless claim is also clearly frivolous and is denied.

Defendant's convictions and sentences are valid. This § 2255 motion is completely without merit and is DISMISSED.

Consideration must also be given to issues that may occur if the Defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion. Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 movant may appeal without this certificate.

<u>Lyons v. Ohio Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997), held that district judges may issue certificates of appealability under the AEDPA. The Court also held that AEDPA codifies in amended § 2253 the standard for issuing a certificate of probable cause found in prior § 2253, which was essentially a codification of <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983). <u>See</u> <u>Lyons</u>, 105 F.3d at 1073.

> [P]robable cause requires something more than the absence of frivolity . . . and the standard for issuance of a certificate of probable cause is a higher one than the 'good faith' requirement of § 1915. . . . [A] certificate of probable cause requires petitioner to make a substantial showing of the denial of [a] federal right. [A] question of some substance, or a substantial showing of the denial of [a] federal right, obviously [does not require] the petitioner [to] show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.

11

Barefoot, 463 U.S. at 893 (internal quotations and citations omitted). In this case, the Defendant's claims are clearly without merit and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore denies a certificate of appealability.

The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. Hereford v. United States, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal in forma pauperis in a § 2255 case, and thereby avoid the $455 filing fee required by 28 U.S.C. §§ 1913 and 1917,[1] the prisoner must seek permission from the district court under Fed. R. App. P. 24(a). Hereford, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

Rule 24(a) states, in pertinent part that:

> A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress,

---

[1] The fee for docketing an appeal is $450. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

12

      and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith.  For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by this Defendant is not taken in good faith, and he may not proceed on appeal <u>in forma pauperis</u>.

    IT IS SO ORDERED this 13th day of September, 2006.

                                      <u>s/ J. DANIEL BREEN          </u>
                                      UNITED STATES DISTRICT JUDGE